# United States District Court

FILED
SEP 2 2006
CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

_____MIDDLE_____ DISTRICT OF _____ALABAMA_____

UNITED STATES OF AMERICA

v.

HENRY THOMAS

## CRIMINAL COMPLAINT

CASE NUMBER: 2:06 mj 92-CSC

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __August 1, 2006__, in __Bullock__ county and elsewhere within the __Middle__ District of __Alabama__ defendant(s) did, (Track Statutory Language of Offense)

with intent to defraud, falsely make, forges, counterfeit, engrave and print any order in imitation of and purporting to be a blank money order issued by or under the direction of the Post Office Department and Postal services,

in violation of Title __18__ United States Code, Section(s) __500__. I further state that I am a(n) __Postal Inspector__ and that this complaint is based on the following facts:
Official Title

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED BY REFERENCE

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

September 20, 2006                                    at   Montgomery, Alabama
Date                                                       City and State

Charles S. Coody, U. S. Magistrate Judge          _____
Name & Title of Judicial Officer                   Signature of Judicial Officer

## **AFFIDAVIT**

The undersigned, being duly sworn on oath, deposes and says:

My name is James D. Tynan and I am a United States Postal Inspector. I have been working as a postal inspector since April 2002. I am currently assigned to the Atlanta Division domiciled in Montgomery, Alabama. As a postal inspector, I enforce federal laws relating to postal offenses. My assignment includes, but is not limited to, investigations of mail theft, obstruction of mail, charge card fraud, identity theft, burglaries and robberies of post offices. This affidavit is submitted in support of applications for federal search warrants for the house at 680 Brooks Road, Union Springs, AL 36089; the mobile home trailer located on the property and adjacent to the house located at 680 Brooks Road, Union Springs, AL; and any and all vehicles located on the property. I am also seeking a federal arrest warrant for Henry Thomas (THOMAS). This affidavit contains information obtained personally by me as well as information from other Postal Inspectors and law enforcement officers.

BACKGROUND

On August 24, 2004, a male suspect entered the Ft. Davis, AL Post Office located at 14125 Highway 29 S, Ft. Davis, AL 36031-9998, and robbed the post office and the postmaster. At approximately 3:10 p.m. (CST), the suspect, described as a black male, approximately 30 years old, 5'11" to 6', weighing approximately 175 lbs., entered the post office and asked to buy a $435 money order and a stamped envelope. Postmaster Mary S. Davis (DAVIS), stated that she pulled a stamped envelope from her stamp drawer and placed it on the inside counter ledge and that as she looked away, the suspect jumped through the counter line window and pushed her to the ground. DAVIS was handcuffed to a rolling chair and threatened with physical harm if she looked at the suspect. The suspect stole her purse and postal funds. As the suspect was leaving he pulled the telephone from the wall and threw it on the floor. The suspect also stole the USPS money order imprinter and blank United States Postal Money Orders. Davis suffered cuts and bleeding on her left wrist, a bump on her head, and an abrasion

1

and bruise on her right elbow. There were no other customers or employees in the post office at the time of the robbery.

INVESTIGATION

Postal Inspectors from the Montgomery and Birmingham, AL domiciles and the Macon County Sheriff's Office responded to the scene. A complete audit was conducted of the post office. The audit disclosed a shortage of $105.61, 105 postal money orders and the money order imprinter. The stolen money orders are identified by serial numbers as: #9198143095 thru #9198143099 and #9198143100 thru #9198143199.

The crime scene was processed and several items were recovered and sent to the Postal Inspection Service Forensic Laboratory, Memphis, TN, for fingerprint processing and analysis. On September 9, 2004, Jonica S. Lasiter, Latent Fingerprint Analyst, contacted me and informed me that she had identified Marvin Thomas' fingerprint on the white stamped envelope left on the counter from the robbery scene and recovered by postal inspectors.

Following the robbery, all the stolen postal money orders were put on a watch list at the Postal Money Order Division of the Postal Inspection Service. Once any of the stolen money orders are negotiated, the money orders would go through normal banking channels and eventually end up at the Postal Money Order Division. There is normally a 6 to 14 days lag time from the time a money order is negotiated until it ends up at the Postal Money Order Division.

Following the robbery, reward posters were distributed in the surrounding area for a reward of up to $50,000 for the arrest and conviction of the person or persons who committed the robbery.

On August 28, 2004, Postal Inspector David Bosch received a telephone call from a person who wished to remain anonymous. This individual stated they ran into a person known to them as Henry Thomas (THOMAS) and identified him as the brother of Marvin Thomas. The caller stated that THOMAS was driving a blue Cavalier, late 1980's or early 1990's model, and that THOMAS had recently purchased a lot of groceries, beer and illegal drugs. The caller stated that THOMAS

2

invited him/her to a big barbeque and that he/she had mentioned the reward poster, that THOMAS looked at the reward poster and stated he needed to change his shirt and pants because the shirt and pants that he was wearing matched the description of what the robbery suspect was wearing during the robbery of the Ft. Davis Post Office.

The same caller called Inspector Bosch on September 7, 2004, and stated that a couple of days earlier they had seen a "money order maker". The caller described it as sort of like a small typewriter with only numbers on it and that they saw green or little buttons on it. The caller said this "money order maker" was in an open trunk at THOMAS' residence. The caller said the car that this item was in was a blue older model Cavalier.

Investigation revealed that Marvin Thomas (MTHOMAS) had possessed and cashed 15 of the 105 stolen postal money orders and that his fingerprint was at the scene of the robbery, as previously described.

On September 13, 2004, Inspector Russell Payne received a federal criminal complaint and arrest warrant for (MTHOMAS) Marvin Thomas, of 680 Brooks Road, Union Springs, AL 36089.

On September 15, 2004, Postal Inspectors executed the search and arrest warrants. (MTHOMAS) was arrested at his residence and was verbally advised of his rights. (MTHOMAS) agreed to speak with inspectors and was transported to the Montgomery, AL domicile and interviewed.

(MTHOMAS) stated he had heard about the robbery of the Fort Davis, AL Post Office on the news or in the area. (MTHOMAS) stated he had previously been to the Fort Davis Post Office however he had not been there in months.

(MTHOMAS) confirmed he had cashed the money orders, but later stated he did not know they came from the robbery. (MTHOMAS) said he was given the money orders and cashed them, but it's not against the law. When asked who gave him the money orders, (MTHOMAS) stated, "I won't say where I got them."

(MTHOMAS) stated that he did not rob the Fort Davis Post Office. When asked if he knew who robbed the post office, he stated, "I don't want to answer that question."

3

I re-advised (MTHOMAS) of his constitutional rights, as printed on the statement form and provided him the opportunity to write a statement. He declined stating that he didn't write too well. He said he would let me write what he told me. I wrote a statement for (MTHOMAS), however, when I attempted to swear him to the statement, he chose not to sign the statement. (MTHOMAS) did write his name and my name on the statement and initialed three mistakes.

When (MTHOMAS) would not sign the statement, I informed him that our forensic laboratory identified his fingerprint on a piece of evidence recovered from the Fort Davis Post Office on the afternoon of the robbery. I reminded him that he had just told us he had not been in the post office in months. (MTHOMAS) stated that his fingerprint could have got there at anytime and a lot peoples' prints would be in the post office, but we informed him the postmaster stated she handed the robber this piece of evidence. (MTHOMAS) did not acknowledge this statement and commented he would have to "take the fall".

On September 15, 2004, during the execution of the search warrant bearing on (MTHOMAS)' residence, Postal Inspectors Payne and J. M. Dormuth interviewed Henry Thomas (THOMAS) who lived there with (MTHOMAS). Inspector Dormuth explained to THOMAS why the house was being searched and that Postal Inspectors were trying to recover the stolen money order imprinter and remaining stolen money orders. Inspector Dormuth told THOMAS that (MTHOMAS) was not fully cooperating and was willing to take all of the responsibility on himself. Dormuth reported that THOMAS said several times, "We'll take that."

Inspector Payne explained to THOMAS that Inspectors were searching for evidence in connection to the Fort Davis Post Office robbery and about the stolen money order imprinter and remaining stolen money orders. Payne stated that THOMAS said, "Marvin didn't do that".

Payne stated that at one point, THOMAS said the money order imprinter and money orders were not in the house. THOMAS reportedly then asked Payne what would happen if Lt. (Marvin) Crayton, Macon County Sheriff's Office, found the imprinter and money orders on the side of the road; THOMAS wanted to know if this would help (MTHOMAS). THOMAS told Payne he needed the day to work it out.

THOMAS left and was due to return about 10:30 a.m. and told Inspector Payne he would get the items Payne was looking for. At about 12:30 p.m., Inspectors discovered THOMAS at his home and he appeared to be drinking. THOMAS told Inspectors Bosch and Payne he had nothing to tell them and was through with our investigation.

On September 28, 2004, THOMAS appeared at the United States Courthouse Annex in Montgomery, Alabama, to provide me with finger and palm prints, handwriting exemplars, and photographs pursuant to a subpoena. THOMAS was not cooperative and, in fact, was initially disruptive. THOMAS eventually provided finger and palm prints and handwriting exemplars, but was again reluctant to pose for photograph, and initially refused to pose for a photograph wearing a light colored baseball cap and sunglasses, as the postal robber allegedly wore. After a few moments of resisting the photograph, THOMAS posed for the photograph both with and without the hat and sunglasses. Before putting on the hat and posing for the photograph, THOMAS stated "She can't identify me anyway, because she failed the polygraph." This statement was made in the presence of me, former Assistant United States Attorney Matthew S. Miner, and attorney James Cooper, Esq.

On February 9, 2005, during witness interviews relating to pending criminal case and upcoming trial against Marvin Thomas, I met with the previously referenced caller in this affidavit along with former Assistant United States Attorney Matthew S. Miner. The purpose of the meeting was to ascertain the caller's willingness to testify and likely testimony. The caller identified herself as a relative of Marvin and Henry Thomas. At the meeting, she confirmed that she had been the caller. She explained that the source of her information was her son, who is also a relative of Marvin and Henry Thomas. She confirmed her prior reports. She also added that on two occasions, including as recently as November or December 2004, THOMAS told her son and her son's girlfriend that he (THOMAS) had robbed the Fort Davis Post Office and that Marvin Thomas had been present. THOMAS said that he was the person who had actually committed the robbery. The "caller" further added that THOMAS had told her son that the postal money imprinter was not in his house, but was in his sister's trailer, adjacent to his house.

5

On February 10, 2005, a federal search warrant issued allowing the search of a mobile home trailer, located on the same piece of property and adjacent to THOMAS' house of 680 Brooks Road, Union Springs, AL 36089. The money orders and imprinter were not located.

On February 14, 2005, the case of <u>United States v. Marvin Thomas</u>, 04-CR-188 commenced. On February 16, 2005, Marvin Thomas was found guilty on charges relating to the receipt and cashing of 15 money orders taken during the robbery. On April 18, 2005, Marvin Thomas received a sentence of 51 months in prison.

On February 27, 2006, I met with Marvin Thomas and his attorney, Tim Halstrom, as part of a proffer meeting regarding <u>United States v. Marvin Thomas</u>, 05-CR-101. Thomas stated that he knew from whom he got the money orders from but that he would still not tell me because he did not want to bring anyone else into it. Marvin Thomas stated that when that person starts cashing the money orders then I would catch him like he was caught.

Between July and September 2006, I was notified by our money order division that between on or about July 3, and August 29, 2006, 27 of the outstanding 90 money orders have been cashed totaling $6,264.85. As a note one additional $337.33 money order was unsuccessfully attempted to be negotiated in Mobile, AL, at the Bel Air Station Post Office. A spreadsheet of the stolen, cashed or attempted, money orders is attached as Exhibit A.

A further review of the money orders disclosed that of the 28 money orders which have been attempted or negotiated, 20 of those money orders have had Henry Thomas, 680 Brooks Road, Union Springs, AL 36089 in the "from" category. Another money order was from a B (illegible) Thomas, Union Springs, AL 36089; Beatrice Thomas is Marvin and Henry Thomas' mother who resides at 702 Brooks Road, Union Springs, AL 36089. Six of the money orders are endorsed "Henry Thomas". Seven of the money orders from Henry Thomas have his Alabama Driver's License number, 5301601, written on them. 10 of the 27 money orders have been cashed in Springville, Indiana, and Bedford, Indiana, of which nine of those 10 had information written on them from Henry Thomas.

On September 15, 2006, I contacted Detective Danny Irwin, Bedford, IN, Police Department, who stated that on August 26, 2006, THOMAS was arrested for Operating a Vehicle while Intoxicated, having an open alcohol container, expired license plates, driving while suspended and wrong way on a one-way.  The arresting officer reported that THOMAS provided his Alabama Driver's License and an address of 680 Brooks Road, Union Springs, AL 36089.

Irwin reported that on September 9, 2006, while out on bond, THOMAS was arrested for Theft of Property, Possession of Marijuana and Public Intoxication. As of September 18, 2006, THOMAS is being held in the Lawrence County, IN, Jail with no bond.

At the time of this affidavit these are the known negotiated stolen postal money orders.  It is not known at this time if there are additional negotiated stolen postal money orders still in transit in the banking system.  There are at least 62 outstanding postal money orders and the imprinter unaccounted for.  Each money order could be made payable for up to $1,000; that is a potential loss of $62,000. To my knowledge there have been no additional stolen money orders cashed since THOMAS has been in jail in Indiana.

Based on my training and experience and my communication with other Postal Inspectors who specialize in this type of investigation, it is my understanding that offenders of this type of criminal activity frequently keep items associated with the robbery in their residences or vehicles.  Also, many of these offenders do not see the incriminating nature of other items that can connect them to the robbery.  In this case the offender would not necessary realize the incriminating nature of the Alabama Driver's License used in the negotiation of a number of the stolen postal money orders.  Also, the offenders rarely realize the incriminating nature of receipts of items purchased with the stolen postal money orders, the items purchased, the clothes worn during the robbery, etc.  Normally all of these items would be kept in the residence or vehicles along with items stolen in the robbery.

Also, based on my experience, offenders often hide or keep evidence in vehicles left on the property.  Broken down vehicles often become storage faculties and items are often kept or hidden in these vehicles.  A vehicle had been described

7

being used in the negotiation of some of the postal money orders. The description was of a blue late 1980's or early 1990's Chevrolet Cavalier. A more detailed description of this vehicle is not known at this time. Also, it is likely the offender may have used other vehicles at this residence. It is very likely that receipts, driver's licenses, and other items from this robbery will be in vehicles at this residence.

I submit, based on the above information, that there is probable cause to believe that the residence located at 680 Brooks Rd., Union Springs, AL 36089 described specifically in Exhibit B; the mobile home trailer located on the property and adjacent to the house located at 680 Brooks Road, Union Springs, AL and any and all vehicles located on the property; there is now contained evidence of violations of Title 18, Untied States Code, § 500, Negotiation of Stolen Postal Money Orders; § 2 and § 2114(a), Conspiracy to Commit Robbery of a Post Office; and, § 2114(b), Receipt, Possession, Concealment, or Disposal of Government Property, specifically those items described in Exhibit C.

I submit, based on the above information, that there is probable cause to arrest Henry Thomas for his involvement in violations of Title 18, Untied States Code, § 500, Negotiation of Stolen Postal Money Orders; § 2 and § 2114(a), Conspiracy to Commit Robbery of a Post Office; and, § 2114(b), Receipt, Possession, Concealment, or Disposal of Property.

_____
J. D. Tynan
Postal Inspector

Sworn and subscribed to before me this _____ day of September, 2006.

_____
Charles S. Coody
United States Magistrate Judge

## **ATTACHMENT B**

Directions to subject location 680 Brooks Road, Unions Springs, AL 36089 from Tuskegee, AL. Start out going Northeast on W. Northside Street toward AL-81 South (less than .1 miles). Turn right onto AL-81 South/Westside Street and continue to follow AL-81 South (less than .1 miles). Turn right onto South Main Street/US-29/AL-15 and continue to follow South Main Street/AL-15 (1.3 miles). Stay straight to go onto SE Old Columbus Road/CR-26 (.5 miles). Stay straight to go onto CR-10 (15 miles). Turn sharp right at the white wooden sign on the right side of the road that reads "Creekstand AME Zion Church #1" onto a dirt road. Turn on the first dirt road to the left and continue to the first dirt road to the right. Travel approximately 100 yards and 680 Brooks Road, Union Springs, AL 36089 will be on the left hand side of the road.

The residence of 680 Brooks Road, Unions Springs, AL 36089 is described as a small one-story white wood frame residence with blue trim and a small covered front porch. The roof of the residence is a reddish/tan color. A black rural mailbox with the number "680" is located along the road in front of the residence.

## **ATTACHMENT C**

Postal money orders:
Serial #9198143095 thru #9198143099   and   #9198143100 thru #9198143199.

Any money order vouchers that correspond to the above serial numbers;

A United Stated Postal Service money order imprinter;

Alabama Driver's License #5301601 in the name of Henry Thomas;

Any receipts from cashing establishments between July 3, 2006, and the date the warrant is served.